**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke W. Sironski-White (State Bar No. 348441)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         lsironski@bursor.com
         jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MILLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MASTER LOCK COMPANY LLC and FORTUNE BRANDS INNOVATIONS,<br><br>Defendants. | Case No. **'26 CV 3081 JO   SBC**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Miller ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Master Lock Company LLC and Fortune Brands Innovations ("Defendants").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action complaint on behalf of Plaintiff and other similarly situated consumers who purchased Defendants' Master Lock 140 line of "pick resistant" padlocks (the "Products").[1]

2.      Defendants sell padlocks under one of the best-known and most reputable lock brands in the United States: Master Lock.

3.      Each Product within this line is accompanied by a score on the left side of the packaging indicating how pick-resistant the Product is, from one to ten, with each of the Products being listed as a 4 out of 10.  On websites like Amazon, and on the Product packaging, Defendants affirmatively claim the Products are "pick resistant" and contain a "4-pin cylinder" which "prevents picking."

4.      Defendants have capitalized off their well-established brand and made a killing selling the 140-line of padlocks.  Unfortunately, Defendants' Products have zero pick-resistance and are shockingly easy to pick.

5.      This is because Defendants' "pick-resistant" Products are made and sold with a critical design defect—central to the Products' function as a lock which protects against intrusion and resists being picked—that makes unlocking them with a simple $2 tool nearly as easy and quick as using the actual key.

---

[1] This includes, but is not limited to, the 140D, 140Q, 140T, 140DLF, and 140KAD. Further research and discovery may reveal more padlocks which suffer from the same design defect and vulnerability to picking as these padlocks do.  Plaintiff reserves the right to amend this pleading to add such products in the future.

6.      In other words, Defendants' Products are not pick resistant in the slightest, and Defendants' claims to consumers to the contrary are objectively false and misleading.  By any reasonable metric, Defendants' Products provide zero resistance to picking.  Ironically, in fact, Defendants' Products serve as great starting practice padlocks for those wanting to learn how to pick locks because of how easy it is to pick them.

7.      Accordingly, Plaintiff brings claims against Defendants on behalf of himself, and all others similarly situated for (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violations of California's Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; and (5) Unjust Enrichment / Restitution.

## PARTIES

8.      Plaintiff Charles Miller is a natural person and citizen of California who resides in San Diego, California.  Plaintiff Miller purchased Defendants' 140D padlock from a brick-and-mortar Home Depot store in San Diego, California.  Plaintiff purchased Defendants' 140D lock several times, as recently as November 2025.  Before making his purchases, Plaintiff Miller reviewed and relied on Defendants' printed representations on the package that the Product had a level-4 pick resistance.  Plaintiff also read the back of the packaging which stated that the "pin tumbler cylinder" provided "increased resistance to picking."

9.      Plaintiff had no reason to believe that the Product bore a design defect which rendered the Product wide open to picking with a simple comb pick.  Plaintiff uses the Products to secure gates and tools for work and the tire on his RV.  Defendants' false representations were part of the basis of the bargain in that Plaintiff would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known.  Thus, as a direct result of

2

Defendants' material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries.

10.    Plaintiff remains interested in purchasing the Product from Defendants in the future.  However, he is unable to determine if the Product is actually pick-resistant to *any* degree because of its defective design.  As long as the Product is marketed as being "level-4" pick resistant, when it is not, Plaintiff will be unable to make informed decisions about whether to purchase Defendants' Product—and similar "pick-resistant"-branded Products within Defendants' line in the future and will be unable to evaluate the different prices between Defendants' Product and competitors' products.  Plaintiff will likewise be unable to rely on Defendants' marketing and representations going forward.  Moreover, he is likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their marketing is accurate, non-misleading, and that their Product actually conforms to Defendants' representations that the Product is, at least to some degree, pick-resistant.

11.    Defendant Master Lock Company LLC is a Wisconsin entity with its principal place of business in Oak Creek, Wisconsin.

12.    Defendant Fortune Brands Innovations is an Illinois entity with its principal place of business in Deerfield, Illinois.

13.    Together, Defendants jointly manufacture, design, market, and put into the stream of commerce, the Products at issue in California and throughout the United States.  Accordingly, Defendants are jointly and severally liable for the violations alleged herein.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because there are more than 100 Class Members, at least one member of the Class is a citizen

3

of a different state than Defendants, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs.

15.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California, including in this District, and purposefully availed themselves of the benefits of doing business in this District by conducting substantial business in California such that Defendants have significant, continuous, and pervasive contacts with the State of California.  In addition, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District by purchasing the Product in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the events, omission, and acts giving rise to the claims herein occurred in this District, including Defendants' sale and Plaintiff's purchase.

## FACTUAL ALLEGATIONS

## I.    THE MASTER LOCK BRAND

17.    Master Lock is one America's most established consumer padlock brands.  Founded in 1921, the company contributed to keeping war-time weaponry secure and helped deliver more than 150,000 locks to close bars and pubs across the country during the height of prohibition.[2]

18.    Defendants' brand has endured.  Today, Defendants supply padlocks for everything from school lockers to bike locks, to fences and toolboxes.  "Master Lock emphasize[s] durable mechanical locks, padlocks, and combination solutions, maintaining strong brand recognition in residential and industrial security sectors."[3]

---

[2] Bobby Tanzilo, *Made in Milwaukee: Master Lock,*
https://onmilwaukee.com/articles/master-lock-made-in-milwwaukee.

[3] Future Market Insights, Inc., *Locks Market (2025-2035),*
https://www.futuremarketinsights.com/reports/locks-market.

19.    Not surprisingly then, Defendants generated more than $550 million in 2015,[4] and more than $860 million in 2022.[5]

20.    Eventually, the once proud Milwaukee-made company prioritized revenue over quality.  Defendant Master Lock Company LLC, a "subsidiary of Fortune Brands Innovations … and its parent company [] noted in investor materials plans to boost profits from $50m to $75m through 'footprint improvements' that include the closure" of its Milwaukee plant to move jobs "abroad to Mexico and China again, where Master Lock has manufacturing plants."[6]  Its chase for profit continued.

21.    Defendant Master Lock Company LLC is in the process of moving its headquarters from its birthplace in Oak Creek, Milwaukee to the headquarters of its "parent company to consolidate its offices in Illinois, essentially ending a more than century-old legacy in the Milwaukee area."[7]

## II.    DEFENDANT'S PRODUCTS ARE DEFECTIVELY DESIGNED

### A.    Anatomy of a Padlock

22.    Humans have used some version of a padlock for centuries.  In 500 BC, the Romans first used a version of a lock resembling a functional padlock with iron locks holding bolts in place that could be manipulated with a key.[8]

---

[4] Univ. of Wisconsin Milwaukee, *Master Lock Company LLC,* https://emke.uwm.edu/entry/master-lock-company-llc/.

[5] Michael Sainato, *Master Lock's Milwaukee Plan to Close After 100 Years and Send Jobs Abroad,* https://www.theguardian.com/us-news/2023/jun/29/master-lock-milwaukee-plant-closure-manufacturing-holdout.

[6] *Id.*

[7] Joe Schulz, *Master Lock to Close Headquarters in Oak Creek, Move Jobs to Illinois,* https://www.wpr.org/economy/jobs/master-lock-close-headquarters-oak-creek-move-jobs-to-illinois-deerfield-fortune-brands-innovations.

[8] Lock Supplies, *Padlocks: A History,* https://www.clksupplies.com/blogs/news/padlocks-a-history.

23. The industrial revolution ushered in the "cartridge" style padlock ubiquitous today



24. Padlocks are secured through a pin system that, when matched, gives way to a rotating barrel that releases the shackle.



25. This design is simple to produce, allowing companies like Defendants to mass produce them.

26. Without a key, the inside of the padlock features pins that must be lined up to make the "plug" rotate and release the shackle.

6



27.   Pin holes are carved into the top of the "plug" (the center piece the key slides into):



28.   At the end of the plug is a protruding piece of metal called the "cam:"



7

29.   The cam acts as a latch holding the shackle in place.  When the plug is rotated, the cam turns vertically which separates the latches:



30.   To turn the plug and thus release the shackle, the pins within the body of the lock must be aligned.  This starts with the small metal cylinders called "key pins" which sit in the small holes on the top of the plug:



31.    Each pin is a different height, corresponding with the profile of the key. Above the key pins are chambers which hold "driver pins" that are pushed down by springs designed to keep the driver pins in contact with the key pins:



32.    The line where the driver and key pins meet, and where the plug rotates, is called the shear line:



33.     When there is no key in the plug, the driver pins are held below the shear line by the springs and on top of the key pins, thus preventing the plug from rotating:



34.     When the correct key is inserted, the key pins are pushed up, but kept just below the shear line and the driver pins are thus pushed above the shear line.



10

35.    Without the shear being obstructed, the plug can rotate.  When the pins align and the plugs rotate, the rectangular shape of the cam creates downward pressure on the latches attached to the shackle, causing them to separate so the shackle can be released.  At the same time, a spring within the body of the lock pushes outward causing the shackle to come free without needing to pull it:



**B.    Defendants' Defective Design Makes Its Products Easy to Pick**

34.    Defendants offer a series of padlocks including but not limited to their 140D lock which claims to be a level-4 pick resistant Product directly on its label:

11



35.     Defendants claim throughout their online marketing that the Products "4-pin cylinder prevents picking[.]"[9]   But as consumers have noted, regardless of the level, Defendants' 140D is not pick resistant at *any* level:

★☆☆☆☆

**Picked easy**

3 years ago

It is in general bad. I picked in seconds and I used a bit of soda can to open it one time

Master Lock    Originally posted on Masterlock.com

───────────────────

[9] Meijer, *Master Lock Solid Brass Padlock 140D, 1-9/16 Inch Wide,* https://www.meijer.com/shopping/product/master-lock-solid-brass-padlock-140d-1-9-16-inch-wide/7164937550.html.



★☆☆☆☆

**not good**

2 years ago

i just picked this lock 0/10

✖  No, I do not recommend this product.

Master.    Originally posted on Masterlock.com

36.    This is because Defendants' supposedly pick resistant Products are deeply flawed.  The Products are made with a deeper-than-necessary chamber which accommodates the driver pins and the key pins.  At the same time, the plug itself is wide enough to accommodate a standard comb pick without any resistance.

37.    Because Defendants' 140 line of locks meet these criteria; a comb pick can be slid into the plug and, with minor upward pressure, lift the driver pins and the key pins above the shear-line, thereby circumventing the need for a key. Below are two images demonstrating the attack.  The first image (left) shows the comb pick in front of the lock with the pins fully engaged.  The second image (right) shows the comb pick inside the lock, pushing all of the pins above the sheer-line.




13

38. Comb picks are easy to use and easily available. For just $5.99, any person can purchase a simple comb pick on Amazon.[10]

39. As one experienced lockpick has explained, this defect is easily fixed by "making a shorter bible" and a "paracentric keyway."[11]

40. A paracentric keyway is a high-security lock design featuring intricate, protruding warding that crosses the vertical centerline of the keyway, preventing a straight path to the pins. Similarly, a "bible" is the chamber that houses the springs and pins.

41. In other words, Defendants' design makes it shockingly easy for anyone to slide a comb pick into the lock and open it without a key. The attack can be learned with minimal practice.

42. Indeed, counsel for Plaintiff purchased a Master Lock 140D and a comb pick in researching this case and learned the technique in under ten minutes. The attack is nearly as fast as just using a key, as demonstrated by a video recorded by counsel for Plaintiff.[12] This is hardly the making of a pick-resistant lock, and to have advertised it as offering any sort of resistance is blatantly misleading.

43. As ButterflyMX, one of the largest manufacturers in cloud-based home security systems explains, "[p]ick-resistant locks also often feature an extra set of tumblers within the key cylinder that render typical lock-picking tools useless."[13]

44. And California law is clear: any reasonable consumer is empowered to take Defendants' representations at face value and interpret representations with their

---

[10] *See* Amazon.com, *Upgrades Steel Repair Comby Tool Set Precisions Crafted Multiple Tool Comby Set for Home & Electronics Maintenances,* https://www.amazon.com/s?k=comb+pick+lock+picking+tool&crid=FI7HVFKSRG GU&sprefix=comb+pick+lock%2Caps%2C192&ref=nb_sb_ss_p13n-expert-pd-ops-ranker_2_14

[11] YouTube.com, *[275] Master Lock 140D, How to Open Any In Seconds!,* https://www.youtube.com/watch?v=u0chjaZGY9o.

[12] See: https://youtu.be/tA2kX1TDQBM (Recorded April 16, 2026)

[13] ButterflyMX, *Are Pick-Proof Locks Worth It? 3 Best Pick-Proof Locks & How They Work,* https://butterflymx.com/blog/pick-proof-locks/.

ordinary meaning.  Dictionary.com defines "resistant" as "exhibiting or offering resistance."[14]

45.    But even on the lower end of Defendants' ad hoc pick resistance scale – such as a 4 out of 10 – any reasonable consumer would expect that the lock would resist basic attacks, especially when the cause of the vulnerability is a well-known defect which can be addressed with minimal change to the Products' design.  As it stands, however, the performance of Defendants' Products would be more fairly characterized as a 0 out of 10 on Defendants' pick resistance scale.

46.    And while no lock is per se impenetrable, Defendants are one of the few brands affirmatively claiming that *their* products are resistant to picking at any level despite this flawed design making picking the lock as easy as using the key.  For example, padlocks sold by the Brinks brand makes no mention that its locks are resistant to picking, because—just like Defendants'—they are not:



---

[14] Dictionary.com, *Resistant,* https://www.dictionary.com/browse/resistant.

15

47.     But Defendants prioritized marketing over truth, and affirmatively misrepresented their Products' ability to withstand picking to gain a competitive advantage.

## III.    DEFENDANT'S OMISSION IS ACTIONABLE

48.     Defendant had a duty to disclose because of its exclusive and/or superior knowledge concerning the design of the Products.  Moreover, Defendants had a duty to disclose the existence of this defect because the defendant is central to the Products' function as a supposedly pick-resistant padlock.

49.     Although Defendant is in the best position to know the true nature of its Product during the relevant timeframe, to the extent possible, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

50.      **WHO:** Defendants' Master Lock Company LLC and Fortune Brands Innovations.

51.      **WHAT:**  Defendants' conduct here was, and continues to be, fraudulent because they omitted and concealed that they had designed the Products in such a manner that their locking function—despite being branded as "pick resistant" and otherwise branded with a number denoting the pick resistance—could be easily bypassed with a simple comb pick and slight upward pressure.  These omissions were material to Plaintiff and the Classes because they would not have paid the same amount for the Products or would not have purchased the Products at all had they known the Products were made with this critical defect.  Defendants knew or should have known that this information was material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given their expertise and offering of products, as described above, yet they continued to pervasively market the Products in this manner in the United States.

52.      **WHEN:** Defendants made material misrepresentations and omissions to Plaintiff and Members of the Classes during the putative class period, including prior to and at the time of purchase, despite having knowledge of the manner in

16

which the Products were designed.  Thus, Defendants, as one of the largest designers and manufacturers of padlocks in the United States, knew or should have known that its Products' locking mechanism was easy to bypass.  Yet, it continued to pervasively market the Products as being difficult to pick at certain levels on the packaging and entirely "pick resistant" online.

53.    **WHERE:** Defendants' made material misrepresentations and omissions on the Products' labels and packaging.

54.    **HOW:** Defendants made material misrepresentations and omissions of fact regarding the Products by representing and warranting that the Products were difficult to pick or otherwise entirely pick resistant.  Defendants, on their labeling, omitted material disclosures to consumers about the true design of the Products.

55.    **INJURY:** Plaintiff and Class Members purchased, paid a premium (up to the full price), or otherwise paid more for the Products than they would have, or alternatively they would not have purchased the Products at all, absent Defendant's misrepresentations and omissions.

**CLASS ALLEGATIONS**

56.    Plaintiff brings this matter on behalf of himself and all similarly situated in the following classes (collectively, the "Classes")

> All natural persons in the United States who purchased the Products for personal use during the applicable statutory period. (the "Nationwide Class.")

57.    Plaintiff also brings this matter on behalf of himself and all similarly situated in the following Subclass:

> All natural persons in the State of California who purchased the Products for personal use during the applicable statutory period (the "California Subclass")

58.    Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants

17

or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendants' counsel.

59.    Plaintiff reserves the right to expand, limit, modify, or amend the class definitions, including the addition of one or more Subclasses, in connection with her motion for class certification, or at any other time, based on *inter alia*, changing circumstances and new facts obtained.

60.    **Numerosity:** Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are tens of thousands of people who purchased the Products and who have been injured by Defendants' false and misleading representations and omission.  While the exact number of members of each Class is unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery from records maintained by Defendants and their agents.

61.    **Commonality and Predominance:** The questions of law and fact common to the classes which predominate over any questions which may affect individual class members include, but are not limited to:

(a)    Whether Defendants' Products were defectively designed;

(b)    Whether Defendants' Products are easy to pick;

(c)    Whether Defendants' Products are pick-resistant;

(d)    Whether Defendants' representations and warranties are false and misleading;

(e)    Whether Defendants' conduct violated the statutes referenced herein;

(f)    Whether a reasonable consumer would be deceived my Defendants' conduct.

62.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the members of the Classes.  The named Plaintiff, like other members of the Classes, purchased the Products.  Plaintiff relied on the representations and

warranties made by Defendants on the Products' packaging that they were pick resistant.

63.    **Adequate Representation:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this class action.  Neither Plaintiff, nor Plaintiff's counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff is able to fairly and adequately represent the interest of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Class or additional claims as may be appropriate.

64.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with California's consumer protection laws.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiff and the California Subclass)**

65. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the California Subclass.

67. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."

68. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

69. Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

70. Defendants violated Civil Code §§1770(a)(5), (a)(7), and (a)(9) by advertising and selling the Products as being "pick resistant," and ascribing a numerical ranking of difficulty when, in fact, the Products are made with a defect rendering them simple to pick with an ordinary comb pick.

71. Plaintiff and the California Subclass suffered harm as a result of the violations of the CLRA because they incurred, charged, and/or paid monies for the Products that they otherwise would not have incurred or paid had they known the Products were made with a defect rendering the representations false and misleading.

72. On April 2, 2026, prior to filing this complaint, Defendants received Plaintiff's demand letter via certified mail.  The letter advised Defendants that they were in violation of the CLRA with respect to their false and misleading

representations and warranties about the qualities of its Products and demanded that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

73.   Defendants failed to remedy the issues raised by the notice letter.

74.   Pursuant to Civ. Code § 1780, Plaintiff and the California Subclass seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendants from continuing their violative acts and practices; (c) restitution of all money and property lost by Plaintiff and the Subclass as a result of Defendants' unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) attorneys' costs and fees.

**COUNT II**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

75.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76.   Plaintiff brings this claim individually and on behalf of the California Subclass against Defendants.

77.   California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

78.   **Unlawful Business Practices:** Defendant violated the UCL's proscription against engaging in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as well as by violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*, and by

21

breaching their express warranties and being unjustly enriched.

79. As more fully described above, Defendant's misleading packaging and labeling of its Product is likely to deceive reasonable consumers. In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully above, thereby violating the common law.

80. Plaintiff and the California Subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

81. **Unfair Business Practices:** Defendants also violated the UCL's prohibition against engaging in unfair business practices. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, *et. seq.*, as the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

82. There were reasonably available alternatives to further Defendants' legitimate business interest other than the conduct described above, such as redesigning the Products' internal mechanisms and not labeling them as "pick resistant" or otherwise ascribing some degree of pick resistance. There are no legitimate business purposes served by Defendants' conduct, which caused Plaintiff and the California Subclass economic injury because they purchased a Products, the basis of the bargain for which was untrue.

83. **Fraudulent Business Practices:** Defendants further violated the UCL's proscription against engaging in fraudulent business practices. Defendants' claims, nondisclosures, and misleading statements with respect to the Products, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

84. Plaintiff and the California Subclass suffered a substantial injury by virtue of buying the Products which they would not have purchased, or would have done so on different terms, absent Defendants' unlawful, fraudulent, and unfair packaging, labeling, and omission about the Products' defect which effects the central function of the Products are a reliable, pick-resistant lock.

85. There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Products.

86. Plaintiff and the California Subclass had no way of reasonably knowing that the Products they purchased was not truthfully marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

87. The gravity of the consequences of Defendants' conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

88. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

## COUNT III
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

89. Plaintiff incorporate the foregoing allegations as if fully set forth herein.

90. Plaintiff brings this claim on behalf of himself and the California Subclass against Defendants.

91.    Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive, members of the California Subclass and public.  As described throughout this Complaint, Defendants misrepresented the Products as being pick resistant and ascribed an affirmative measure to how resistant they are.  However, each of the Products is not pick resistant to any degree because they can be easily unlocked with a simple comb pick and slight upward force.

92.    By its actions, Defendants disseminated advertisements both on their Products' physical packaging and online marketing stating the degree of "pick resistance," and claiming that the Products are "pick resistant."  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public.

93.    The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants failed to disclose that the Products are made with a critical defect making them not pick resistant at all.

94.    Defendants continue to misrepresent to consumers that the Products are pick resistant and continue to advertise the Products with values indicating their pick resistance and pick difficulty.

95.    In making and disseminating these statements, Defendants knew, or should have known, their advertisements were untrue and misleading in violation of California law.  Plaintiff and members of the California Subclass based their purchasing decisions on Defendants' omitted material facts.  The revenue attributable to the Product sold in those false and misleading advertisements likely amounts to millions of dollars.  Plaintiff and members of the California Subclass were injured in fact and lost money and property as a result.

96.    The misrepresentations and non-disclosures by Defendants of the material facts described and detailed herein constitute false and misleading

24

advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et. seq.*

97. As a result of Defendants' wrongful conduct, Plaintiff and members of the California Subclass lost money in an amount to be proven at trial. Plaintiff and the Subclass are therefore entitled to restitution as appropriate for this cause of action.

98. Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under California Code Civ. Proc. § 1021.5; and (e) injunctive relief, and other appropriate equitable relief.

## COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)

99. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

100. Plaintiff brings this claim individually on behalf of himself and the Nationwide Class.

101. Plaintiff brings this claim under the laws of the State of California.

102. Plaintiff and Nationwide Class Members formed a contract with Defendants at the time Plaintiff and Nationwide Class Members purchased the Products.

103. The terms of the contract include the promises and affirmations of fact made by Defendants on the Products' packaging, as described above.

104. This labeling constitutes an express warranty and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and Nationwide Class Members.

25

105. As set forth above, Defendants purport through their labeling and packaging, to create an express warranty that the Products are pick resistant with vary levels of difficulty when the Products are not pick resistant at any level.

106. Plaintiff and Nationwide Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the Products.

107. Defendants breached express warranties about the Products and its qualities because, despite Defendants' warranties that the Products are pick resistant in vary degrees, the Products are made with a critical defect rendering them pickable with any common comb pick and slight pressure. Thus, the Products are not pick resistant to any degree and so the Products do not conform to Defendants' affirmations and promises described above.

108. Plaintiff and each Nationwide Class Member would not have purchased the Products had they known the true nature of the Products.

109. As a result of Defendants' breach of express warranty, Plaintiff and each Nationwide Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT V**
**Unjust Enrichment / Restitution**
**(On Behalf of Plaintiff and the Nationwide Class)**

110. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

111. Plaintiff brings this claim under the laws of the State of California.

112. To the extent required by this law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

113. Plaintiff and members of the Nationwide Class conferred benefits on Defendants by purchasing the Products.

114.   Defendants were unjustly enriched in retaining the revenues derived from Plaintiff and members of the Nationwide Class's purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that the Products were defectively made in such a way that the "pick resistant" representations and corresponding difficulty values were untrue.  These omissions caused injuries to Plaintiff and members of the Nationwide Class because they would not have purchased the Products if the true facts were known.

115.   Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a)   For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)   For an order declaring that Defendants' conduct violates the statutes referenced herein;

c)   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)   For prejudgment interest on all amounts awarded;

f)   For an order of restitution and all other forms of equitable monetary relief;

g)   For injunctive relief as pleaded or as the Court may deem proper;

h)   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 15, 2026                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:   /s/ *L. Timothy Fisher*
                L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke W. Sironski-White (State Bar No. 348441)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com
        jglatt@bursor.com

*Attorneys for Plaintiff*

28

**CLRA Venue Declaration**

I, L. Timothy Fisher, declare as follows:

1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., and counsel of record for Plaintiff Charles Miller in this matter.  Mr. Miller alleges that he resides in San Diego, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California, as Plaintiff purchased the Product within this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 15th day of May 2026.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

29